1              IN THE UNITED STATES DISTRICT COURT

2                        DISTRICT OF UTAH

3                       NORTHERN DIVISION

4

5   CHRISTOPHER JOSEPH TUVELL,        )

6   individually and as the heir of  )

7   David Christopher Tuvell, et al.,)

8              Plaintiffs,            )

9   vs.                              )   CASE NO. 1:12-CV-128DB

10  BOY SCOUTS OF AMERICA, et al.,   )

11             Defendants.            )

12  _____)

13

14

15           BEFORE THE HONORABLE DEE BENSON

16           -------------------------------

17                   August 27, 2013

18

19                   Motion Hearing

20

21

22

23

24

25

```
 1                    A P P E A R A N C E S

 2


 3
         For Plaintiff:              ROBERT GILCHRIST
 4                                   900 Parkside Tower
                                     215 South State Street
 5                                   Salt Lake City, Utah

 6
         For Defendant:              DAVID CONCANNON
 7       Blue Water Scuba            200 Eagle Road
                                     Suite 116
 8                                   Wayne, Pennsylvania

 9                                   GAINER WALDBILLIG
                                     175 South Main Street
10                                   Suite 1600
                                     Salt Lake City, Utah
11

12       For Defendant:              MICHAEL SKOLNICK
         Boy Scouts of America       10 Exchange Place
13                                   Fourth Floor
                                     Salt Lake City, Utah
14

15       For Defendant:              SPENCER BROWN
         Professional Association of 3 Triad Center
16       Dive Instructors           Suite 500
                                     Salt Lake City, Utah
17

18

19

20

21

22       Court Reporter:             Ed Young
                                     247 U.S. Courthouse
23                                   350 South Main Street
                                     Salt Lake City, Utah 84101-2180
24                                   801-328-3202

25
```

```
 1   August 27, 2013                              2:30 p.m.

 2                    P R O C E E D I N G S

 3

 4          THE COURT:  Good afternoon.

 5          Christopher Joseph Tuvell, et al., versus Boy

 6   Scouts of America, et al.  12-CV-128.  We're here on

 7   defendant Blue Water Scuba's and Lowell Huber's motion to

 8   dismiss the first and third causes of action in the amended

 9   cross claim of the defendant Boy Scouts of America and Great

10   Salt Lake Council of the Boy Scouts of America.

11          Representing the movants is -- yes, sir.  Please

12   tell me your name.

13          MR. WALDBILLIG:  Gainer Waldbillig and David

14   Concannon.

15          THE COURT:  Thank you.

16          Mr. Concannon, you're here from Wayne,

17   Pennsylvania?

18          MR. CONCANNON:  That is correct, Your Honor.  It

19   is just outside of Philadelphia.

20          THE COURT:  That is a long ways to come for this

21   hearing, but it is nice to have you here.

22          MR. CONCANNON:  Thank you very much.

23          THE COURT:  For the defendants Boy Scouts of

24   America and Great Salt Lake Council, Inc., Michael Skolnick.

25          MR. SKOLNICK:  Good afternoon, Your Honor.
```

1          THE COURT:  Good afternoon.

2          Are these other attorneys with your firm?

3          MR. SKOLNICK:  No, Your Honor.  They are

4    representing other parties.

5          THE COURT:  What are your names?

6          MR. GILCHRIST:  Bob Gilchrist.  I represent the

7    plaintiffs, Your Honor.

8          THE COURT:  I see.  I thought you said they are

9    parties, but they represent other parties.

10          MR. SKOLNICK:  Yes.

11          THE COURT:  You represent --

12          MR. GILCHRIST:  Plaintiffs.

13          MR. BROWN:  I am Spencer Brown and I represent the

14    Professional Association of Dive Instructors.

15          THE COURT:  The what?

16          MR. BROWN:  Professional Association of Dive

17    Instructors, P.A.D.I.

18          THE COURT:  Okay.  The dive instructors.  It is

19    nice to have you both here.

20          It is your motion, Mr. Waldbillig.  Are you going

21    to address it?

22          MR. WALDBILLIG:  Mr. Concannon will, Your Honor.

23          THE COURT:  Mr. Concannon, please.

24          MR. CONCANNON:  Thank you, Your Honor.

25          May it please the Court, David Concannon for the

1    defendants Blue Water Scuba of Logan, Lowell Huber and

2    Corbett Douglas.

3           It is a fairly straightforward motion under Rule

4    12(b)(6) to dismiss two of the three counts of the

5    cross-claim of the Boy Scouts.  The first cross-claim is for

6    breach of contract against Huber and Blue Water, and the

7    second and the third are for indemnification against Huber

8    and Blue Water, and those are at issue, and the second

9    cross-claim for respondeat superior is not at issue in this

10   motion.

11          The breach of contract cross-claim alleges that a

12   contract that was entered into in 2010 between Blue Water

13   and the Boy Scouts, and just so that I get the parties

14   right, it is the Great Salt Lake Council B.S.A. and Blue

15   Water Scuba of Logan.  That contract on its face, and we

16   have submitted it to the Court, was only for a term of three

17   months, from June until August 31st of 2010, and then it

18   expired on its face.  There was no contract for the 2011

19   season, which is when this unfortunate accident took place.

20   The Boy Scouts are alleging that the contract somehow

21   renewed itself by mutual assent and performance, which is

22   kind of a vague allegation, and they have not acknowledged

23   that they performed in 2011 and we have moved to dismiss

24   that count for failure to state a claim.

25          There is no written renewal obviously that is at

1   issue and the parties to the renewal and the terms of the

2   alleged renewal are not specified in the cross claim.

3           On the indemnification count, which is count

4   three, there is no written contract of any kind for

5   indemnification whatsoever.  It is not addressed in the 2010

6   agreement that they are alleging was breached.  We don't

7   know who the parties to this indemnification were supposed

8   to be.  Blue Water ceased business or its corporate

9   registration expired in April of 2011 before the accident

10  took place, and we don't believe that they have stated a

11  claim upon which relief can be granted on count three.

12          Thank you.

13          THE COURT:  Thank you very much.

14          Mr. Skolnick.

15          MR. SKOLNICK:  Thank you, Your Honor.

16          May it please the Court, counsel, Your Honor, Blue

17  Water's motion is essentially asking this Court to dismiss

18  without any discovery, without any ability to find out what

19  they say about specific allegations in the amended cross

20  claim at this early stage of the case, and rule that right

21  now the Court could not possibly find under the terms that

22  have been pled a written contract which renewed by mutual

23  assent and conduct in 2011.  We would submit to the Court

24  that that is an incorrect conclusion.

25          I would like to invite the Court's attention to

1    the contract itself.  It has been provided to the Court

2    among the papers from the Blue Water defendants.  It is

3    their first exhibit.  The nature of the contract, Your

4    Honor, is critically important, especially with respect

5    to -- does the Court need a moment to find it?

6            THE COURT:  I need it.

7            Do you have it?  Do I have it in this book?

8            MR. SKOLNICK:  It should be in the courtesy copies

9    that we provided to the Court, Your Honor, at tab one.

10           THE COURT:  I have it now.

11           Thank you.

12           MR. SKOLNICK:  Thank you, Your Honor.

13           The reason that I invite the Court's attention to

14   this and want to emphasize it is that Blue Water argues some

15   very specific case law about why indemnification could not

16   exist, why it should not be found and why the parties'

17   relationship could never establish that.  I think that is

18   correct based on this contract and I will explain why.  The

19   cases that they cite talk about looking at the practical

20   effect of the contract.

21           This contract, Your Honor, if you look at it, has

22   a number of very specific duties imposed on the outfitter,

23   Blue Water.  The outfitter, Blue Water, does everything.

24   That is appropriate because the outfitter, Blue Water, is

25   the expert in diving.  The Great Salt Lake Council is not an

1    expert in diving.  If you look at the contract, in section

2    three there is about one sentence or two sentences, rather,

3    of things they are supposed to do.  They are supposed to

4    advertise before camp and they are supposed to help with

5    registration.

6            If you look at section two of the contract, Blue

7    Water does everything that has to do with diving.  David

8    Tuvell's death had to do with diving.  It had to do with the

9    services that Blue Water was providing through this

10   contract.  The reason that we believe that this contract

11   governs and that the evidence will bear that out is because

12   there is no other contract.  There is no written contract.

13   The Blue Water defendants have not come forward and said

14   there is an oral contract, but, Your Honor, they have

15   admitted in the pleadings filed in this case that they

16   showed up in 2011 and provided services.

17           We will show eventually that they were the same

18   services that they provided the year before.  This contract,

19   Your Honor, is very clear that it may be renewed by mutual

20   agreement.  There is a distinction that is also very clear,

21   and if the Court looks at page 2 of the contract it says in

22   paragraph four changes must be made by written agreement.

23           Now, Blue Water attempts to gloss over or perhaps

24   confuse that issue and I want to straighten out any

25   confusion that may exist.  We don't allege in our amended

1    cross claim that there was any change.  In fact, it is quite

2    the opposite.  We allege that it is the same deal as existed

3    in 2010.  If the Court looks at paragraph five, it says that

4    it may be renewed annually upon the agreement of both

5    parties.  The Court I am sure will be sensitive to the fact

6    that there is no mention of a written agreement of the

7    parties, it just says agreement of the parties.  That is

8    what we have pled, that it renewed by agreement of the

9    parties as evidenced by the fact that Blue Water shows up

10   and Great Salt Lake Council registers and advertises and

11   this boy, David Tuvell, does not die on the day in question.

12        We allege in our first cause of action breach of

13   contract against Mr. Huber and Blue Water, that at a minimum

14   they breached the contract by failing to name Great Salt

15   Lake Council as an additional insured.  In this 2010

16   contract they are required to do that.  They are supposed to

17   provide $2 million of insurance, Your Honor.  The evidence

18   that is before the Court is that we on behalf of our clients

19   made a request and requested information about that and

20   there is no insurance.  They didn't perform that obligation.

21        So at this early stage of the pleadings, where all

22   the pleadings are construed in a light most favorable to the

23   non-movant, namely Great Salt Lake Council, the Court is to

24   conclude that this contract renewed, renewed by mutual

25   assent and conduct, and that there was a duty that was

1   breached here.  Namely, you're supposed to insure Great Salt

2   Lake Council for $2 million.

3          It is obvious why that is.  Again, it ties in to

4   this indemnification cause of action, and it is because

5   Great Salt Lake Council does not know anything about diving.

6   They are not divers.  They contracted with this outfitter,

7   Blue Water and Huber, to provide that service.  They

8   understand that they are contracting with P.A.D.I., a

9   certified nationally or internationally recognized dive

10  organization, a certified provider of that service.  Because

11  they are not a provider themselves, Great Salt Lake Council

12  wants Blue Water and Huber to obtain insurance and indemnify

13  them, effectively indemnify them against any claim such as

14  this.  They don't want to be dragged into Federal Court in

15  Salt Lake and sued for a boy's death who passes away during

16  a dive.

17         Again, the effect of this contract is to seek that

18  protection and that level of protection in terms of get us

19  insurance, provide all of these services and you're

20  responsible for them, not us.

21         THE COURT:  Technically indemnification does not

22  mean to provide insurance, and I don't have your complaint

23  in front of me, but tell me exactly what your

24  indemnification cause of action is based upon.  Is it based

25  solely upon the contractual provision?

1          MR. SKOLNICK:  Yes, Your Honor.

2          It is based on this written contract that we argue

3    renewed in 2011 and the effect of it.

4          THE COURT:  But it is not a contract to indemnify

5    directly, right?

6          MR. SKOLNICK:  We would concede that it does not

7    say indemnify in it, Your Honor.

8          THE COURT:  Why, just out of curiosity for

9    pleading purposes, why do you have a cause of action in

10   which you seek indemnification?  It sounds like what you're

11   seeking is a breach of contract claim for failing to get the

12   $2 million insurance policy and put you on as an insured.

13         MR. SKOLNICK:  We also have that, Your Honor.

14         THE COURT:  Tell me why you need both.  And, if

15   so, how do you get to indemnification through being provided

16   as an insured?

17         MR. SKOLNICK:  I would be happy to address that,

18   Your Honor.  It ties in to what I was saying about the case

19   law that the plaintiff relies on.

20         They cite a line of cases, including Kennecott

21   Copper Corporation, and it is a Tenth Circuit case, and it

22   is before the Court in their reply memorandum, and Kennecott

23   Copper Corporation says that under Utah law, and I am

24   reading at headnote three, the summary, under Utah law the

25   actual effect of an agreement rather than its mere form

 1  governs in determining whether rules governing

 2  indemnification should apply.  That is why I was referring

 3  earlier, Your Honor, to the actual effect of this contract

 4  which renewed in 2011.  The actual effect is to make this

 5  set of parties, the Blue Water defendants, responsible for

 6  the dive operation.  B.S.A. or rather Great Salt Lake

 7  Council is not responsible for the dive operation.

 8         When you look at the actual effect of the deal

 9  between the parties, you get us $2 million of insurance and

10  you perform all these dive functions, and the actual effect

11  of that, I would submit, again, and it is in the early stage

12  of the pleadings, is the indemnification or requirement to

13  indemnify because they didn't get the insurance.

14         If they didn't get the insurance, what is our

15  recourse?  Well, you should have gotten us insurance.  Shame

16  on you.  If they don't indemnify and if they don't have a

17  requirement to step in and indemnify, we are prevented from

18  appreciating the benefit of our bargain, which is we're

19  going to be protected against having to step in and defend

20  against a case like this where negligence in providing the

21  dive operation is what is alleged.

22         THE COURT:  Right, but wouldn't you get to the

23  same place with a breach of contract claim?

24         MR. SKOLNICK:  We may or may not, Your Honor.

25         THE COURT:  Well --

1          MR. SKOLNICK:  We may or may not.  It may be a

2     belt and suspenders approach, and the Court may think that

3     just the breach of contract is enough, and that is all that

4     the Court can really see, but I would just submit that at

5     this early stage the Court should view the pleadings in a

6     light most favorable to the Great Salt Lake Council, and

7     give us an opportunity to at least explore whether the

8     actual effect of this document, including the intent of the

9     parties, was to indemnify and make Mr. Huber and Blue Water

10    responsible.

11          I think it is even more important when we learn

12    that Blue Water is out of business, so now we only have

13    Huber to look to.  Mr. Huber is an individual, not an

14    entity, and we don't know what assets he may have.  We don't

15    know what ability to defend he may have.  We suspect he is

16    defending here under some policy of insurance that at least

17    named him and Blue Water as insureds.  We have not been able

18    to do any discovery to verify that yet.

19          Again, Your Honor, it is more of a close question

20    on the indemnification than on the breach of contract, and

21    we concede that and there is not an express provision, but

22    you don't look to necessarily just the express provision,

23    and under the law that Blue Water's own counsel has cited to

24    the Court, this Kennecott Copper case, and the Utah line of

25    cases that they cite is similar.

1          I am looking at the Meadow Valley Contractors

2     case, which is a Utah Court of Appeals case, and if you look

3     at paragraph 19 in that case, it talks generally about what

4     Blue Water is arguing here, that the mere agreement to

5     provide insurance in and of itself does not mean that you

6     have an indemnification obligation.

7          Now, I inserted the phrase in and of itself in my

8     interpretation of that, but I submit to the Court that that

9     is a reasonable interpretation, if you look at this universe

10    of case law that we have been talking about and the actual

11    effect of the document.  You don't just look in isolation

12    and say, okay, the contract says you have to insure, but it

13    does not specifically say indemnify so there is no duty to

14    indemnify.  It is a broader analysis than that, I would

15    submit to the Court, and we need an opportunity to explore

16    it at this early stage.

17         THE COURT:  In the reply brief the movant says,

18    and I'm quoting from their brief --

19         MR. SKOLNICK:  At what page, Your Honor?  I have

20    it handy.

21         THE COURT:  Page 4.

22         In the Kennecott Copper case the Tenth Circuit

23    rejected an attempt by General Motors to force Kennecott

24    Copper to indemnify when the latter had only agreed to

25    provide insurance.

```
 1              MR. SKOLNICK:  I see that, Your Honor, and I

 2   appreciate that argument, but they didn't in their reply

 3   brief talk about this actual effect language in Kennecott

 4   Copper.  That has not been mentioned or discussed at all.  I

 5   read to the Court what the Kennecott Copper court said about

 6   looking at the actual effect, and beyond the headnote it is

 7   even more explicit if you look further on in the case in

 8   headnotes two and three, and at the end of that section it

 9   says we are satisfied that Utah would look to the actual

10   effect of the agreement rather than its mere form to

11   determine whether the rules governing indemnification should

12   apply.

13              Again, it comes back, Your Honor, to the same

14   thing I have been advancing to the Court, actual effect, and

15   if you look at the actual effect of that contract, it is to

16   make Blue Water and Huber responsible, not Great Salt Lake

17   Council, because of this area of very specialized knowledge

18   and skill that is involved here.

19              THE COURT:  Then why didn't they just put in the

20   contract an agreement to indemnify?

21              MR. SKOLNICK:  I guess they could have done that

22   and I guess in an ideal world they would have done a written

23   contract in 2011, but we're dealing with a charitable

24   organization that has a broad volunteer base and a

25   relatively small professional staff and they are stretched
```

1    pretty thin.

2            I think that once we eventually get to trial if we

3    were looking at why specific terms were not put into the

4    contract, I would be offering some evidence about that, but

5    I think that is the best I can do in response to the Court's

6    question today.  Number one, I don't know, and, number two,

7    those are what I suspect are some of the factors involved.

8            THE COURT:  You want to get something that your

9    client didn't specifically contract for.  You contracted for

10   something different, at least on its face, and there is a

11   difference between requiring the contracting partner to

12   cover you with insurance than to indemnify.

13           MR. SKOLNICK:  Well, if you look at the actual

14   effect, Your Honor, and coming back to that, and I may

15   disagree with the Court about this, but I will take a stab

16   and see if I can parse our differences, but I think the main

17   difference is with respect to what did the parties intend.

18   We don't know that at this stage.  I think the contract may

19   be somewhat ambiguous on that point, but if we're talking

20   about contract interpretation, it would be good to have some

21   evidence about what the intent was by both sides.

22           Aside from intent --

23           THE COURT:  Well, it is not very ambiguous, it

24   seems to me.

25           MR. SKOLNICK:  I would submit the same thing, Your

1   Honor, that --

2        THE COURT:  There is nothing particularly

3   ambiguous about outfitter agrees to provide scouts with

4   evidence of liability insurance in the amount of $2 million,

5   and agrees to name the Great Salt Lake Council, B.S.A., as

6   an additional insured on the policy.

7        That is pretty clear.

8        MR. SKOLNICK:  Your Honor, I submit that 2-D is

9   also very clear.  Outfitter, that is Blue Water, agrees to

10  observe all B.S.A. safety rules and policies in the

11  operation of the programs.  Well, it is alleged that they

12  didn't do that, so is B.S.A. now going to be required to

13  defend and indemnify themselves because they didn't do that?

14  That is the actual effect of not finding that an

15  indemnification agreement exists.  It comes down to the

16  purpose of the contract and the effect of the contract, Your

17  Honor, again, pursuant to their own case law that they are

18  advancing in their reply memo.

19       THE COURT:  Anything else?

20       MR. SKOLNICK:  May I just review for a moment?

21       THE COURT:  Yes.

22       MR. SKOLNICK:  I think I may be done, but I want

23  to make sure that I covered everything that I intended to.

24       I think it is instructive, Your Honor, to look at

25  the answer that was filed by Blue Water.  This is docket

1    number 65, paragraph 13, where Blue Water admits the

2    following things, including that David Tuvell was, quote,

3    participating in a discover scuba program offered by

4    G.S.L.C., Lowell Huber and/or Blue Water Scuba.  So they

5    lump all of those parties together without reference to what

6    the individual parties' responsibilities are.  Where can we

7    determine those individual responsibilities if not the

8    contract that we argue renewed in 2011?

9              That reminds me, Your Honor, that I have not spent

10   a lot of time on the statute of frauds argument, and I would

11   be happy to address that if it is of concern to the Court.

12             THE COURT:  I don't think so, but tell me, in 2010

13   did the outfitter provide the insurance?

14             MR. SKOLNICK:  I don't know the answer to that,

15   Your Honor.

16             THE COURT:  What if they didn't, then where are

17   you going to be on your renewal claim?

18             MR. SKOLNICK:  Well, I don't know, Your Honor.  I

19   suppose if the Great Salt Lake Council did not insist on

20   that provision being observed in 2010, it might be some

21   argument against renewal, but I don't think it would be

22   decisive by any means.

23             THE COURT:  I just wondered.

24             MR. SKOLNICK:  I think it could be a factor to be

25   considered.  I don't think it would be decisive.  It may not

1    even be informative.  It may just be a term that was not

2    enforced in 2010 but renewed in 2011 and was required in

3    2011.

4              THE COURT:  Then you would really need

5    indemnification.

6              MR. SKOLNICK:  Then we might be more in need of

7    it, Your Honor.  That is a good point and I agree.

8              THE COURT:  Thank you.

9              MR. SKOLNICK:  All right.

10             THE COURT:  Thank you for your argument.

11             Let me hear your response --

12             MR. CONCANNON:  Thank you, Your Honor.

13             THE COURT:  -- Mr. Concannon.

14             MR. CONCANNON:  With all due respect to Mr.

15   Skolnick, who I just met today for the first time --

16             THE COURT:  I didn't mean to bypass you two.

17   You're kind of pushed back like you are not up to the table.

18   I didn't ask you, but if you want to speak ever during this,

19   let me know.

20             MR. GILCHRIST:  We are up to the task but not up

21   to the table.  Thank you.

22             THE COURT:  Go ahead.

23             MR. CONCANNON:  Thank you.

24             I didn't hear Mr. Skolnick answer the Court's

25   question about whether the contract specifically provided

1   for indemnification other than say, no, it does not.  It is

2   clear.  This is a very short agreement.  It is two pages.

3   It is not clear who drafted it, and I don't believe that

4   Mr. Huber drafted it, but it would have been easy for the

5   drafter to have put in there that you provide insurance and

6   indemnification.  It would have been easy for the drafter to

7   put in there not that this contract expires on August 31st,

8   2010, but that the term of the contract this year is until

9   August 31st and it renews automatically thereafter unless

10  terminated by mutual agreement of the parties.  That is not

11  here.

12          As far as indemnification is concerned, I think

13  the four corners of the agreement are fairly clear, and it

14  is a very brief agreement and it provides for some very

15  specific stuff, advertising, who collects the money, who

16  does what, and it would have been easy for them to put

17  indemnification in here if the parties intended that.

18          I am not familiar with a provision in the Federal

19  Rules of Civil Procedure that allows you to think of a

20  potential claim, get discovery on it, and then assert it

21  later.  We are here because there is no claim upon which

22  relief can be granted on indemnification.  There is no

23  written contract.  There is no case law provided by the Boy

24  Scouts.  There is nothing but Mr. Skolnick on contracts.  It

25  is a very broad interpretation of a very simple, easy to

1   understand document that says that it provides for something

2   that the parties did not express.

3        It could have been that the intent of the parties

4   was to provide pizza on Thursdays, but it is not in here and

5   it stretches the credibility of the interpretation of this

6   agreement to say that you should have put in

7   indemnification, which is pretty serious, pay for an

8   attorney of our choice to defend this case through trial,

9   and we didn't bring it up and we didn't put in the contract

10  that that is what we intended in a written agreement when

11  the four corners of the written agreement are very specific.

12       THE COURT:  Why would it necessarily include pay

13  for an attorney?  The insurance would have done that.

14       MR. CONCANNON:  You would think that it would, and

15  that is why it should be in writing, but what the Boy Scouts

16  have asked Mr. Huber to do is pay for counsel of their

17  choosing in addition to indemnify, in addition to provide

18  insurance, and that is the demand that came from

19  Mr. Skolnick's office.  When they found the agreement that

20  had terminated on its face, then they asked for us to pay

21  for their defense in addition to Mr. Huber's defense.  That

22  is what they want.  That is why they filed this cross claim.

23  I don't see where that is anywhere in here.

24       That is the other issue here is what are the terms

25  of the proposed indemnification agreement?  What are we

1    supposed to be agreeing to?  What are the limits?  It is

2    just not there.

3              THE COURT:  Do you know if there was insurance

4    provided under the 2010 contract?

5              MR. CONCANNON:  I do not know.  I do not know the

6    answer to that question, but I can easily find out.

7              THE COURT:  Apparently you're not hired by an

8    insurance company?

9              MR. CONCANNON:  I actually am.

10             THE COURT:  Under that contract?

11             MR. CONCANNON:  I am under a term of insurance

12   that began on July 1st, 2011.  The policy period was

13   July 1st to June 30th of 2012.  I know that.  I just don't

14   want to speculate, and frankly I handle these cases all over

15   the country and I don't pay attention to when a policy -- I

16   know when it began, but if it is not part of what I need to

17   do, I don't do it.

18             I can say this, that I know from investigating

19   this accident five days after it happened that there was not

20   a meeting of the minds between Huber and the Boy Scouts on

21   what was supposed to be done.  If you want to talk about the

22   intent of the parties in the agreement, who is an expert in

23   providing scuba diving, and there is a premises liability

24   claim asserted here against the Boy Scouts, and who is an

25   expert in keeping young boys safe on the property that is

1   not Huber.  That is the Boy Scouts.  This accident occurred

2   in a roped off swimming area where guards had been provided

3   in 2010 when Mr. Huber and Blue Water, actually, more

4   accurately, had agreed to provide insurance, but they were

5   pulled in 2011.

6          If you want to go down this hole and waste

7   resources on whether or not there was indemnification or

8   there was removal and get into all that, which is a sideshow

9   to the real issues here, we're going to get into whether or

10  not Mr. Huber or Blue Water would have agreed to provide

11  insurance to a party that was not following their own safe

12  standards.

13         So we will go that way if we have to, but I don't

14  believe that this very simple agreement -- it says what it

15  says and it says that a change has to be in writing.  The

16  terms of a contract is an integral part of the contract and

17  the parties to a contract are an integral part and

18  performance is an integral part and consideration is an

19  integral part.  You can't just say that something happened

20  because of verbal -- when the contract says any changes have

21  to be in writing.

22         That is why we have moved to dismiss the first

23  counterclaim of breach of contract.  Then when you want to

24  get to indemnification and you want to create provisions

25  that are not there at all, not just, well, paragraph five

```
 1    does not say writing, but for something else entirely, I

 2    just think that that stretches the bounds too far and is

 3    beyond the pale.

 4            Thank you.

 5            THE COURT:  Thank you.

 6            MR. SKOLNICK:  Your Honor, may I be heard briefly?

 7            THE COURT:  Yes, please.

 8            MR. SKOLNICK:  Thank you.

 9            Your Honor, I would just ask that the Court

10    disregard the proffer of evidence about what the intent of

11    the parties was offered by counsel.  I don't think that

12    should be considered by the Court and it is not before the

13    Court, as to Mr. Huber negotiating experts and I

14    investigated five days after, and that is not before the

15    Court and should not be factored into the Court's decision.

16            THE COURT:  Well, I don't think he said anything

17    about intent.  It is okay.  I am not going to consider

18    anything that is not in the record evidence.

19            MR. SKOLNICK:  Thank you, Your Honor.

20            THE COURT:  Nothing else?

21            MR. SKOLNICK:  No, Your Honor.  That was all.

22            THE COURT:  I asked my clerk to bring me a copy of

23    the amended complaint.

24            Is it entitled amended complaint?  Is it a second

25    amended complaint or what is it?
```

1          MR. WALDBILLIG:  I believe it is just the

2    complaint.

3          THE COURT:  I don't mean the complaint.  I mean

4    the cross claim.

5          MR. SKOLNICK:  Our cross claim, Your Honor?

6          THE COURT:  Yes.

7          MR. SKOLNICK:  I believe I have that.

8          May I approach?

9          THE COURT:  Yes, please.

10         MR. SKOLNICK:  I believe that is it.

11         THE COURT:  Now, in this cross claim, on the

12   indemnification cross claim, Mr. Skolnick, you conclude with

13   your paragraph 33 which says pursuant to Utah Code Annotated

14   Section 78-B-5-823 G.S.L.C. is entitled to indemnification.

15         Explain that a little further to me.

16         MR. SKOLNICK:  Your Honor --

17         THE COURT:  It does not appear to be contract

18   based.

19         MR. SKOLNICK:  I apologize, Your Honor.  I looked

20   at it briefly before I came over, and I meant to bring a

21   copy of the statute, but I don't have that before me.

22         THE COURT:  How does that statute give you an

23   indemnification claim?

24         MR. SKOLNICK:  That is what I'm saying.  I am not

25   prepared to argue that.  I apologize.  If it is important to

 1    the Court --

 2            MR. WALDBILLIG:  Your Honor, I believe it is the

 3    comparative fault statute that is the section he is

 4    referring to, but I am not positive.  I think that is what

 5    he is referring to.  If that is true, then it just means

 6    that there is no implied indemnity and there is no

 7    contribution indemnity under the --

 8            MR. SKOLNICK:  That refreshes me, Your Honor, and

 9    I appreciate counsel's courtesy with that.

10            It is with respect to the claims in the complaint

11    against Blue Water and what Blue Water is claimed to have

12    done and failed to do and us not being held -- us, Great

13    Salt Lake Council, not being held responsible for their

14    negligent conduct, if any.

15            THE COURT:  All right.  But not relying on that

16    provision, it appears that your indemnification claim is

17    based entirely on the insurance clause in the contract,

18    correct?

19            MR. SKOLNICK:  No.  I would disagree respectfully

20    with the Court.  It is also based on the actual effect of

21    the contract, and taking into account the respective

22    responsibilities that are set out in paragraphs two and

23    three.

24            THE COURT:  Okay.  But you do agree that they are

25    incorrect in understanding that your indemnification claim

1    is based on a breach of contract?

2            MR. SKOLNICK:  It is based on that written

3    contract that we say renewed in 2011, correct, Your Honor.

4            THE COURT:  Well, it gets a little muddy to me.

5    The outfitter clearly agrees in the contract to observe all

6    of the B.S.A. safety rules and policies in the operation of

7    the program.  I assume it is your argument that if they

8    didn't do that and that as a result the Boy Scouts are held

9    liable for something to the plaintiff here, that that should

10   trigger some entitlement to damages on your part because of

11   that breach of contract?

12           MR. SKOLNICK:  Correct.

13           THE COURT:  You think that is synonymous with

14   indemnification?

15           MR. SKOLNICK:  The actual effect is synonymous,

16   correct, Your Honor.

17           THE COURT:  Understood that way, it is just

18   another breach of contract claim.  You call it

19   indemnification, but it is really just another breach of

20   contract claim.

21           MR. SKOLNICK:  I suppose it could be characterized

22   that way, Your Honor, in the way that the Court has, and it

23   may be a matter of rubric, and it may be a belt and

24   suspenders approach, but we feel strongly that we have a

25   right under those contractual provisions to have them be

1    responsible financially for what was alleged to have

2    happened to this young man, not us.

3          THE COURT:  Does that include hiring an attorney

4    to defend you?

5          MR. SKOLNICK:  Well, we have asked for that and

6    they have graciously declined.

7          THE COURT:  As you said to be responsible for the

8    harm caused to this family, and that is where you have to

9    scratch your head.

10         How far does indemnification go?

11         MR. SKOLNICK:  I think that you have to look back

12   at the terms of the contract, and they should be required to

13   defend with respect to 2-A through 2-F, and in particular

14   2-A, provide all of the equipment and facilities and provide

15   for upkeep and care.

16         For instance, if the tanks were faulty, if the

17   underwater course that was designed by Mr. Huber and Blue

18   Water was faulty and contributed, why should B.S.A. have to

19   defend those things?  It is Mr. Huber's responsibility under

20   this contract, Your Honor, to do that.  If Mr. Huber didn't

21   have B.S.A.'s safety rules being applied and followed, that

22   is his responsibility under this contract.

23         We understand that there may be a defense advanced

24   by Blue Water that you said that you would get volunteers

25   for waterfront safety, but that is not what this contract

1    says.

2              THE COURT:  Right, but we don't know exactly what

3    indemnify means.

4              MR. SKOLNICK:  I would concede that, Your Honor.

5    It is suggested by 2-A through F.

6              THE COURT:  You keep mixing it up.  You want to

7    say why should we have to defend ourselves, and the

8    indemnification term or the indemnification agreement could

9    include providing a defense as well as responding to the

10   loss, right?

11             MR. SKOLNICK:  Correct, Your Honor.

12             THE COURT:  How are we going to know?  You have

13   said several times it wouldn't be fair for the Boy Scouts to

14   respond with either a defense or to pay for this lawsuit if

15   it was Mr. Huber that caused it, right?

16             MR. SKOLNICK:  I think the Court can --

17             THE COURT:  Are we just turning the law into one

18   big ball of fairness?

19             MR. SKOLNICK:  No, Your Honor.

20             I think the Court should err on the side of

21   finding a degree of definition, of definiteness in this

22   contract, and I would concede that that probably does not

23   include paying for an attorney right now.  It may in the

24   future require them to reimburse our firm's fees.  If at the

25   end of the day we rack up hundreds of thousands of dollars

1    in defense costs because we were brought into this case

2    because they were negligent for not doing 2-A through F,

3    then we may have a claim against them because we were

4    damaged by that.

5             THE COURT:  I suppose it is not enough to have

6    faith in the jury system.

7             MR. SKOLNICK:  If only it were, Your Honor.

8             THE COURT:  In closing argument you want to say we

9    were not negligent at all.  They were.  Right?

10             If the jury comes back and finds them negligent

11   and not you, then all is well, at least in terms of your

12   being responsible for any losses.  But if the jury somehow

13   comes back and holds you both liable, then you want to be

14   able to say we get indemnified somehow.

15             MR. SKOLNICK:  We get indemnified for you.

16             THE COURT:  Couldn't that same jury sort out that

17   question of fact?

18             MR. SKOLNICK:  It may or may not.  They may

19   apportion fault to us that really should not be apportioned

20   to us.  The only thing that we're responsible for in here is

21   advertising and pre-camp registration.

22             THE COURT:  Do we send to the same jury the

23   question of comparative fault, plus whether Blue Water Scuba

24   and Mr. Huber breached the contract and need to indemnify

25   you?

1          MR. SKOLNICK:  We may need to under the cross

2    claim.

3          THE COURT:  But don't the two concepts just

4    combine?

5          MR. SKOLNICK:  I don't know that they --

6          THE COURT:  Well, if they didn't provide the

7    equipment as required, and if they didn't follow the safety

8    rules as required and that adds up to their negligence, then

9    why would we even be talking about the second question of

10   whether they breached the contract by not doing those things

11   and, therefore, are required to indemnify?

12         MR. SKOLNICK:  We might not, Your Honor, but as

13   defense counsel, I want to have that question on the special

14   verdict as to whether they breached their contract and

15   breached their duty to my client, number one, and whether

16   they have a duty to indemnify my client.

17         THE COURT:  I think we would have a jury that

18   would be just utterly confused, but we're getting way, way

19   ahead of ourselves.  I asked the question.

20         Thank you.

21         I recognize that the first cause of action in the

22   cross claim and the third cause of action to both be based

23   on allegations of breach of contract.  On that basis I'm

24   denying the motion.  I find that there is enough evidence to

25   support the possibility of renewal by the action of the

1  parties and performance under the contract by the action of

2  the parties.

3          There appears to be no doubt that the outfitter

4  showed up the next year.  I'm satisfied that under contract

5  law there is enough at least to suggest facts that may

6  constitute a renewal by action, and, of course, the conduct

7  of the parties.  I am not, by ruling this way, validating an

8  indemnification claim.  I am not.  It is labeled that in the

9  cross claim.  That is about the only place I think the word

10 is used until paragraph 33 when indemnification is only

11 associated with Section 78-B-5-823 of the Utah code.  I may

12 have missed it somewhere else.

13         Otherwise, your third cause of action, Mr.

14 Skolnick, appears to me to be based solely on a breach of

15 contract theory.  I'll let it go forward on that basis, but

16 I want it to be clear that I am not recognizing an

17 indemnification claim.  If discovery should expose one, I

18 will allow a request for leave to amend the complaint.  For

19 the law of the case I want that to be clear.  At this point

20 I see no contractual basis for arguing that there is an

21 indemnification provision.  There is only a provision that

22 requires what is required in 2-A through F, and that

23 includes the insurance provision and the agreement to

24 observe safety rules and so on.

25         If in the end that amounts to something like

 1    indemnification, I would prefer to slug out that legal

 2    battle later, but right now I see two breach of contract

 3    claims which I find sufficiently pled to allow discovery to

 4    go forward.

 5            Do you need clarification on that or do you have

 6    any questions?

 7            MR. SKOLNICK:  Not on my part, Your Honor.  Thank

 8    you.

 9            THE COURT:  Over on this side, Mr. Concannon?

10            MR. CONCANNON:  No.  Thank you, Your Honor.  That

11    is clear.

12            THE COURT:  I wonder if you would draft something

13    up in that regard including my language about

14    indemnification?

15            MR. CONCANNON:  Yes.

16            THE COURT:  Thank you for your arguments.  It is

17    kind of an interesting thing.

18            Are we getting close to settling this thing?  No?

19    I don't see any indication of that.

20            Thank you.

21            We'll be in recess.

22            MR. BROWN:  Your Honor, I am sorry, but I had one

23    small matter I was hoping the Court could address.  There is

24    a motion for a protective order floating around.  P.A.D.I.

25    and the plaintiffs had jointly moved for a protective order

1   pertaining to an agreement that was reached between P.A.D.I.

2   and the plaintiffs that we needed to disclose to the other

3   parties and to disclose to the Court.  Blue Water had

4   responded to our motion and proposed an alternative

5   protective order, and we filed a reply saying we are fine

6   with the form of the order that Blue Water proposed, but

7   nobody else had responded to it.  I brought copies of the

8   order, and I wondered if the Court wouldn't mind considering

9   signing that today?

10          THE COURT:  Does every party agree to it?

11          MR. BROWN:  Yes, Your Honor.

12          THE COURT:  Well, then I will gladly sign it.

13   Bring it up.

14          MR. BROWN:  I do have copies for anybody else that

15   wants --

16          MR. WALDBILLIG:  I assume that the order will come

17   out on the electronic filing.

18          MR. BROWN:  Okay.

19          THE COURT:  All right.  On the order I am

20   scribbling out proposed and I signed the protective order.

21          MR. BROWN:  Thank you very much.

22          THE COURT:  We are in recess.

23          (Proceedings concluded.)

24

25