IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

NORTHERN DIVISION


In re:                        )
                              )
CHRISTOPHER JOSEPH TUVELL,    )
SHERRY LYNN TUVELL,           )
individually and as the heirs )
of David Christopher Tuvell,  )
and THE ESTATE OF DAVID       )
CHRISTOPHER TUVELL,           )
                              )
          Plaintiffs,         )
                              )
v.                            )Case No. 1:12-CV-128DB
                              )
BOY SCOUTS OF AMERICA, et al.,)
                              )
          Defendants.         )
_____ )



Transcript of Hearing on Motion
to Amend Complaint



BEFORE THE HONORABLE DEE BENSON


October 14, 2014




Karen Murakami, CSR, RPR
8.430 U.S. Courthouse
351 South West Temple
Salt Lake City, Utah 84101
Telephone: 801-328-4800

APPEARANCES OF COUNSEL:


For the Plaintiffs:    EISENBERG GILCHRIST & CUTT
                       By Robert G. Gilchrist
                          Attorney at Law
                       900 Parkside Tower
                       215 South State Street
                       Salt Lake City, Utah 84111



For Defendant PADI:    STRONG & HANNI
                       By Roger H. Bullock
                          Spencer Brown
                          Attorneys at Law
                       Suite 800
                       102 South 200 East
                       Salt Lake City, Utah 84111

For Defendant          W LAW
Blue Water:            By Gainer M. Waldbillig
                          Attorney at Law
                       Suite 930
                       405 South Main Street
                       Salt Lake City, Utah 84111

```
 1           Salt Lake City, Utah, Tuesday, October 14, 2014

 2                              *   *   *

 3           THE COURT:  Good afternoon.  We're back in

 4   Tuvell v. Boys Scouts, 12-cv-128, and what the court has

 5   before it is Plaintiffs' Motion for Leave to File First

 6   Amended Complaint.  And this is opposed by the

 7   defendants Blue Water Scuba, Lowell Huber, and Corbett

 8   Douglas.  And I need to know who represents whom.  Would

 9   you mind just standing here first and tell me.

10           MR. GILCHRIST:  Certainly, Bob Gilchrist for

11   the plaintiffs, Your Honor.

12           THE COURT:  Thank you, Mr. Gilchrist.

13           MR. WALDBILLIG:  Gainer Waldbillig for the

14   Blue Water defendants, Huber, and Douglas.

15           THE COURT:  All right.  Thank you.

16           MR. BULLOCK:  Roger Bullock and Spencer

17   Brown for PADI, Professional Association of Dive

18   Instructors.

19           THE COURT:  Thank you.  And I think it's

20   fair to say that PADI agrees with the motion, correct --

21           MR. BULLOCK:  That's correct.

22           THE COURT:  -- Mr. Bullock?

23           All right.  Let me hear your arguments.

24   It's your motion, Mr. Gilchrist.

25           MR. GILCHRIST:  Thank you, Your Honor.
```

```
 1                    THE COURT:  It's an intriguing issue.
 2                    MR. GILCHRIST:  It is.  I'm local counsel in
 3   this case, which is neither here nor there.
 4                    THE COURT:  Have you ever had this come up
 5   before?
 6                    MR. GILCHRIST:  Never had.  Everybody I've
 7   released out of the case has always kind of said, good
 8   riddance and good-bye, and they've wanted to be done
 9   with this.
10                    THE COURT:  Is your client doing this only
11   because it agreed to in the settlement agreement?
12                    MR. GILCHRIST:  Only because they agreed to
13   it?
14                    THE COURT:  What other reason would the
15   plaintiff have for letting PADI come in and defend
16   itself against a claim of apportionment liability from
17   Blue Water?
18                    MR. GILCHRIST:  PADI said they would do it,
19   and to have someone else standing here, rather than an
20   empty chair defending is better for us, so I guess
21   that's another way of saying yes to what you said.  But
22   there's a little bit more to it than --
23                    THE COURT:  Okay.  All right.
24                    MR. GILCHRIST:  We thought it was a good
25   idea once they suggested they would do it.
```

1                    THE COURT:  Would you mind telling me why

2       you thought it was a good idea?  I guess that's my same

3       question.

4                    MR. GILCHRIST:  Okay.  Kind of -- because

5       the Blue Water defendants -- I'm sorry, I shouldn't be

6       demonstrative -- will be pointing the finger at PADI

7       saying it's their fault, and we will be defending the

8       empty chairs, everyone always says.  So in this case, it

9       won't be an empty chair because they will be able to

10      stand up and say, no, it isn't all our fault like Blue

11      Water is saying, here's what we did, here's what they

12      did.  So for us to have someone fill that chair is

13      better than an empty chair.

14                   THE COURT:  Fair enough.  And you think the

15      statute let's you do this.

16                   MR. GILCHRIST:  I do, in reading it.  The

17      Boy Scouts don't want to stay in this case, so they

18      settled like 99.9 percent of other defendants I have

19      settled with and are gone.  But it says 78B-5-821 the

20      person seeking recovery, which is us, or any defendant,

21      may join the defendants for -- to determine their

22      respective proportionate share of fault.  I've never

23      done it, I've never heard of anybody doing it, but it

24      clearly says that we can do it.  So if defendants can do

25      it, plaintiffs can do it, and --

1               THE COURT:  You're not seeking recovery from

2    the party you're bringing in.

3               MR. GILCHRIST:  We're not.  We're seeking,

4    as the statute says, to have determined their respective

5    proportions of fault.  I would have worded it a little

6    differently, proportionate share of fault, but

7    proportions of fault.  Yes, that's all we're seeking.

8    The same thing that Blue Water and Huber, they're

9    seeking to put them on the verdict for their

10   determination of their percentage of fault, we're doing

11   the same thing that they want to do.  They're going to

12   be on the verdict.  So we're just saying that they want

13   to defend themselves then they were figuring out a way

14   for that to occur and that is through the statute that

15   says they can do it.  We can ask them -- ask the court

16   to do it, just like Blue Water is asking, it's the same

17   verdict that they want.  They just want an empty chair

18   and we want someone defending the chair, it's as simple

19   as that, and the statute gives us that right.

20               THE COURT:  All right.  Thank you.

21               MR. GILCHRIST:  You're welcome.

22               THE COURT:  Mr. Waldbillig?

23               MR. WALDBILLIG:  And I have never in my 30

24   years ever seen anybody do this before either, even

25   though in the old days I remember filing contribution

1  claims and it was joint and several there.

2          THE COURT:  That's where I began too, so the

3  whole thing is new.  This concept is new to me.

4          MR. WALDBILLIG:  Well, it's -- my first

5  thought was, and the court wasn't here, but I thought it

6  was aligned really well when PADI was sitting right

7  there before they moved because I thought that's exactly

8  what they're trying to pull here is they're going to be

9  a plaintiff in the lawsuit going forward, if this is

10  allowed, with no risk, no loss, nothing.  They just get

11  to come in here and help the plaintiffs, which leads me

12  to wonder what else is there in this settlement that we

13  don't know about?  Who prepared the briefs?  Who is

14  going to pay the expert witnesses?  At some point it

15  starts to wonder what else has gone on.

16          And the reason I'm suspicious, and I

17  wouldn't have been, except what happened at the

18  settlement agreement a little earlier when we went

19  through this whole process and who's pushing it and who

20  isn't, it makes me wonder really what is going on behind

21  all of this because what the plaintiff is doing makes

22  less than zero sense, if that's possible.  There is no

23  reason for them to do it, there is no possible benefit

24  they could have for it, they've got to defend their

25  claim against us, now they've got PADI to help them

1    throw us under the bus.  Think about the big picture,

2    only after they now ask the court and wipe out all the

3    allegations, all the judicial admissions that we made in

4    our original complaint about PADI, and my clients were

5    their agents and they worked for them, throw all those

6    causes of -- get all that out of there, now we'll

7    sanitize the complaint and we'll throw PADI back in.

8             And take a look at -- for instance, let me

9    just take -- we know the undue delay and prejudice, but

10   justice so requires, justice so requires that this

11   motion be dismissed.  There's no justice in what's going

12   on here.  This is an end run around the settlement

13   agreement that they argue, well, it didn't release this

14   claim.  That's not what the settlement agreement said,

15   Your Honor.  Do you have a copy of it, or can I hand one

16   up you?  We can look at a few provisions of it.

17             THE COURT:  Do you refer to it in your

18   brief?

19             MR. WALDBILLIG:  We do in some of it, but

20   finding the page would be harder than just giving you

21   the actual agreement.

22             THE COURT:  Okay.  Hand it up then.  You

23   don't have an extra copy for Jordan, do you, my clerk?

24             MR. WALDBILLIG:  Do you guys have a copy of

25   this?

1            MR. BULLOCK:  I do.

2            MR. WALDBILLIG:  You know, let's just take

3     the very first sentence, the very last clause of it,

4     settles all claims.  Let's go down under the provision

5     that says claims released.

6            THE COURT:  It says settles all claims for

7     damages.

8            MR. WALDBILLIG:  All claims of the estate

9     for damages arising out of.  So it's all claims for

10    damages.  So that means they have no interest in

11    anything at risk in this case when you talk about

12    there's no case in controversy.

13           THE COURT:  But they say this isn't a claim

14    for damages, this is a claim for apportionment.

15           MR. WALDBILLIG:  And go down underneath

16    where it says claims released, and I'm going to read the

17    provision, For and in consideration of the payments set

18    forth below, claimants in each of them release and

19    discharge all claims and causes of action against

20    released parties, including -- this is no -- what we cut

21    out, apportionment, we cut out something else out of

22    this, it is every cause of action.  So whether you call

23    it a claim or a cause of action, they -- if you go to

24    their proposed amended answer, if you want to take a

25    look, do you know what they captioned the claim against

1    PADI?  Cause of action.

2           If you don't mind, Your Honor, I can hand

3    this up as well.  And if it's not -- they call it a

4    cause of action, but if you take a look at paragraph 46,

5    they even reference the settlement agreement.  Oh, we

6    settled all our claims, including all causes of action,

7    we were done with all of this claim, but they called it

8    a cause of action, the exact same thing that PADI was

9    completely released from and that they are now trying to

10   bootstrap around.

11          And if you look down at the next paragraph

12   in the settlement agreement, the next one is all claims,

13   causes of action, demands, as set forth in the certain

14   complaint, in other words, the complaint filed in this

15   action.  These aren't limiting.  These folks say we get

16   to keep our apportionment cause of action that we're now

17   trying to assert.  They're gone.  How is justice pursued

18   by letting them circumvent claims they never had to let

19   PADI come in and now pursue the claims, perhaps provide

20   the expert witnesses, and the rest after they've

21   sanitized the complaint of all the allegations they had

22   against them and all the judicial admissions that

23   they've made in the underlying complaint and now

24   discovery's a month from the end we've all been using

25   during the depositions and the discovery in this case?

1   There is not any justice when you consider what the

2   release said and what they're now trying to bootstrap

3   into an apportionment cause of action.

4           But if you really want to see even more, if

5   you turn to page 7 of their reply memorandum, it's

6   really telling.  I didn't make a copy of this, so I'll

7   just read what they said on page 7.  They're discussing

8   our argument about it being brought in bad faith, the

9   very first paragraph.  And so Blue Water next argues,

10  and then the sentence goes, this argument ignores the

11  language of the statute --

12          THE COURT:  You need to slow down,

13  generally, but especially when you're reading.  I don't

14  think there's any way the court reporter is getting

15  everything you're saying.

16          MR. WALDBILLIG:  They state right in their

17  memorandum the fact that while plaintiffs do not believe

18  PADI was at fault, they don't believe it.  There's

19  something going on here that has nothing to do with

20  justice.  It has to do with some deal that's going on

21  between PADI and the plaintiffs of which I don't know

22  that the terms have been disclosed about what's going

23  on, but that's not how we do things.  You must disclose

24  all of those terms.  They don't believe they're at

25  fault.  The settlement agreement says that they have

1    released all causes of action.  It doesn't limit it, it

2    says everything in the world, and including a whole

3    bunch of other things.  And yet they still come forward

4    today and say, yes, but this is in good faith that we

5    can do this, yes, this is what should be done, this is

6    how you allow an empty chair to have their chance to

7    come forward.  The empty chair had a chance to come

8    forward.  It didn't have to settle, it could have stayed

9    here and presented its case if it wasn't at fault.

10   There was a whole complaint against them.  But instead

11   there was a little get-together in figuring out a way in

12   which they can take all the risk they have, no risk, no

13   downside to any of this, but they can stay and help the

14   plaintiffs point at Blue Water.  That's not justice in

15   any sense of the term.

16          And when you allege what they allege, and

17   they say -- you've got to say they're at fault, first

18   you've got to seek recovery under the statute, but even

19   if you get past that, now they allege, well, you're

20   really not at fault, we really don't believe it, we've

21   settled all our claims, but we're going to apportion

22   fault?  You can't -- you say that with a straight face?

23   I have a hard time saying that there's justice requires

24   that we do this, when you throw on top of that -- you

25   notice the Boy Scouts aren't here, too, by the way,

 1     they're not here trying to stick their nose in this like

 2     every other defendant I've ever seen that gets out of

 3     the case.  So there is no cross-claim, there's no

 4     cross-claim that exists, we didn't sue PADI, so all we

 5     did was an affirmative defense, which is required under

 6     the statutes and the federal local rules to have the

 7     fault apportioned.  So I have to ask, what's their

 8     motive, what's the plaintiffs' motive.

 9              I don't even know that PADI has standing to

10     stand up here and ask for this since they're really not

11     the party here.  It's the plaintiffs making the motion,

12     we opposed it, they didn't oppose it, and joined in it.

13     But I suspect they have a reason why they're here, even

14     though I'm not sure they have standing to even be in

15     court in light of the court's previous rulings.

16              Now, we talk about even the undue prejudice.

17     The sanitized complaint, and I think we attached to the

18     briefing we did kind of an outline of what they took

19     out, they sanitized it, they took out all their judicial

20     admissions that we would use to show that in fact, the

21     facts of this case, both of my clients were volunteers

22     for the Boy Scouts and/or agents of PADI, therefore,

23     even if you have recovery against them, we should be

24     addressing the issues of the agency and the volunteer

25     statute, which now the two parties involved have both

1    settled out and paid a bunch of money.  But they took

2    all those out, they sanitized it because that wouldn't

3    look good if you had PADI back in here.  And now you've

4    got to assert these allegations, so you sanitize it, you

5    take them out, you take out all the judicial admissions

6    and say they didn't count.  That's not the way it should

7    work.  They made those requests, we relied on them --

8                    THE COURT:  Would you be able to use those,

9    I assume you would, in the presentation of your case?

10                   MR. WALDBILLIG:  Well, when you do an

11   amended complaint, and I didn't find one of these, sort

12   of like this new ground of adding basically a plaintiff

13   in the case, I didn't find anything in my quick look

14   that said when you amend the complaint and it takes over

15   and it relates back and there's your complaint, what do

16   you do with the old one.  Are they judicial admissions

17   or are they not judicial admissions when they throw them

18   out of the new complaint?

19                   THE COURT:  I don't know what a judicial

20   admission would say.

21                   MR. WALDBILLIG:  That there's -- and, I'm

22   sorry, I didn't bring the case law, but there are a lot

23   of cases that declare your pleadings and the factual

24   allegations in your complaint are your judicial

25   admissions that you can't run from.  In other words,

 1  they're now admitted for purpose of this case.  So when

 2  I say "judicial admissions," I'm saying their pleadings

 3  and their factual allegations they can't now deny them.

 4  If you allow them to amend their complaint, oh, they're

 5  not in there.

 6           THE COURT:  That's exactly my question.  It

 7  would seem to me you would still be able to -- if you

 8  have a representative of the plaintiffs on the witness

 9  stand to talk about the fact that they at one time had

10  alleged that PADI was in a count, or whatever they said

11  in the original complaint that isn't in the amended

12  complaint, am I wrong about that?

13           MR. WALDBILLIG:  Well, first I don't think

14  any representative I could ever put up of the Tuvells

15  could ever talk about the complaint because my

16  experience is that clients never even read the

17  complaint, it's lawyer stuff, which is why the court --

18           THE COURT:  The claim's being made by the

19  client, and you would want the jury, I assume, to know

20  that at one point in time they had alleged that -- I

21  don't know if they said you were exclusively a

22  volunteer, but whatever it is, it would seem to me they

23  can't, just by amending their complaint, eliminate it

24  from a fact.

25           MR. WALDBILLIG:  Well, they will allege

1    that's not their complaint anymore and that's not their

2    allegations.  And my response is once they've made that,

3    the courts call it a judicial admission, I shouldn't

4    make it judge admission, but the case law makes it

5    called a judicial admission, and once it's in your

6    pleadings and you've alleged it, you're stuck with it,

7    you can't now change your course and come around.  But

8    they have taken all those out, they've sanitized

9    anything that would have pointed back to PADI, they've

10   taken out all causes of action against PADI, they've

11   taken out everything against PADI, and then they admit

12   we've settled with them, we really don't think they are

13   at fault.  And yet they come in here and say please let

14   us amend the complaint to add PADI back in as a

15   plaintiff so that they can pursue their claims and help

16   us go after you with no risk, no liability, no case in

17   controversy between the plaintiffs and them in the fact

18   that they're completely released of all causes of

19   action, which we're right back to what they did the last

20   time.  They now assert a claim, at least we all know

21   what it says, inserting a cause of action against a

22   party they said had no claims or causes of action

23   against them, and they agreed they wouldn't do it.

24   That's futile.  And it doesn't -- justice doesn't

25   require that that be allowed in these circumstances.

1           The Tuvells are going to be faced with my

2    client's claim they were volunteers.  They didn't get

3    paid for what they did.  They didn't have a contract.

4    That contract had terminated, they weren't paid for it,

5    and the Boy Scouts and PADI were the ones that

6    registered and used, therefore it's in their procedures,

7    and my clients volunteered for them.  And we're going to

8    claim the volunteer statute.  And now taking out the

9    exact things of which we can use to show that's true is

10   defeating something we've been relying upon since the

11   beginning of this case.

12           Ultimately they released it, they new they

13   released it, they claimed they wouldn't do this, they've

14   done it again, and justice doesn't require that this

15   court let them sanitize their complaint and bring in

16   another plaintiff to help fund the litigation against my

17   clients.

18           THE COURT:  All right.  Thank you,

19   Mr. Waldbillig.

20           Mr.  Bullock, please.

21           MR. BULLOCK:  Thank you.  May it please the

22   court, counsel.  It is inevitable that PADI's fault will

23   be litigated at trial.  Everybody agrees that that issue

24   is important and necessary.  The question is whether

25   PADI can have the opportunity to participate as a party

1     to defend itself on that issue.

2              At the hearing in April the court had some

3     questions which we want to address hopefully to the

4     court's satisfaction.  The court raised the question how

5     can you have a cross-claim against a party that is not a

6     defendant?  Whether PADI can have a chair that it can

7     occupy during the trial to defend itself, I don't know,

8     I'm not ruling on that.  And the court was glad to

9     entertain motions or requests about the right of an

10    entity to defend itself when it has become a nonparty to

11    the extent that anyone wants to bring them, and that's

12    what Tuvell has done.  And, as a matter of fact, PADI

13    agrees that this procedure is correct.  The answer to

14    the court's concern is that Section 821 provides the

15    substantive rule allowing this joinder.

16             As an aside, in the *Corporation of the*

17    *Presiding Bishop v. Clean Carpet* case Judge Campbell

18    decided that this was the way to go, understanding that

19    that's not controlling on this court, but it may be

20    helpful.

21             We know that the first rule in interpreting

22    a statute is the plain meaning of the words of the

23    statute.  Section 821 is not limited to existing

24    parties.  It says, A person seeking recovery, Tuvell in

25    the case, may join as a defendant any person for the

1   purpose of having determined their respective

2   proportions of fault.  The section does not in any way

3   limit the person seeking recovery, Tuvell, to join

4   persons Tuvell intends to claim damages against.

5   Rather, the statute says for the purpose of having

6   determined their respective proportions of fault.  What

7   it does not say is for the purpose of seeking damages.

8   So the section clearly seems targeted at providing a

9   mechanism for joinder as a defendant for allocation of

10  fault with no accompanying damages claim.

11           As a party, PADI should be entitled to

12  participate to the extent that the Federal Rules provide

13  for rights and duties of parties.  Important, PADI's

14  presence as a party will not deprive Blue Water of any

15  opportunity to adduce evidence and make arguments which

16  it would otherwise have.  We've heard from Blue Water

17  about the release.  However, that's not available to

18  Blue Water.  The release is a contract between the

19  parties to it, Tuvell and PADI, and Blue Water was not a

20  party or an intended beneficiary.  The release belongs

21  to PADI to invoke as a defense, if it wishes to do so,

22  and Blue Water is a stranger to it.

23           If the court is inclined to look at the

24  release, the release does not prevent Tuvell's motion.

25  Again, the release is a contract.  The first rule of

1  interpretation of contracts is to interpret all
2  provisions harmoniously, if possible, in a way which
3  gives meaning to all provisions and leaves no part of
4  the contract meaningless.  As the court has correctly
5  observed, the reference to settlement of all claims is
6  in the same sentence as the reference to damages.  And
7  wherever settlement of claims and causes of action is
8  mentioned throughout the release, it's in close
9  proximity to damages, and that's what's being released.
10           On the other hand, there is a very explicit
11  paragraph which the parties evidently thought was so
12  important that they put it in bold face, PADI desires
13  and intends to remain a party to this action, to the
14  extent the court will allow, in order to defend the
15  professional reputation of PADI and to defend and
16  represent PADI employees and agents who may be witnesses
17  in this action.  So there's really no ambiguity, no
18  misunderstanding about the intent of the release when
19  it's read in its entirety.
20           We have seen two recent awards, one was a
21  jury verdict and one was a trial to the court in federal
22  court in recent years, for the death of a child, and
23  they were both perhaps, I don't know if it's a
24  coincidence, in the amount of $3 million.  So given the
25  opportunity to buy its peace for $800,000, PADI --

1    PADI's decision was reasonable.

2              I agree it's unusual for a defendant to want

3    to stick around.  My experience is the same, as we've

4    heard, they want nothing more than to skate off into the

5    sunset.  But the mechanism exists, the statute says what

6    it says.

7              I could imagine instances like this one, and

8    my imagination is not terribly broad, but I thought,

9    okay, pharmaceutical litigation, which occurs repeatedly

10   involving the same products, tire accident litigation,

11   medical product litigation, and I'm sure there are more

12   and better examples of where this rule would be -- could

13   be and should be applied to benefit to a good result.

14             And I must speak to the implication that

15   there's any further side deal or secret agreement.  I'm

16   not aware of any such thing.  It seems to me that if

17   Blue Water is genuinely suspicious, they can conduct

18   discovery on that issue if they want to.  There's no end

19   run, there's no evidence of any end run, so it doesn't

20   seem reasonable to suggest an end run, no secret terms.

21             The law favors settlements, including

22   presumably partial settlements.  We do think we're the

23   good guys here, we're trying to move it in a healthy

24   direction.  What is sought is reasonable, the statute

25   expressly explicitly allows it.  Another district court

1   thought it was the way to go, and the motion should be

2   granted.

3              THE COURT:  All right.  Thank you,

4   Mr. Bullock.

5              Mr. Gilchrist.

6              MR. GILCHRIST:  Thank you, Your Honor.  Just

7   briefly, not to rehash things, but the facts are what

8   they are.  If they were volunteers, in which we

9   adamantly deny because they received money, then they're

10  volunteers, and they'll get out of the case as

11  volunteers.  They want to use, they being Blue Water,

12  the same verdict form that we do, you know, list PADI on

13  it.  They haven't said they don't want PADI on the

14  verdict form, they just don't want PADI to participate

15  in regards to defending themselves as PADI wants to do.

16  The settlement agreement says that it is the entire

17  agreement between the parties.  There is no other

18  agreement, there's no you-get-some-money-back agreement

19  or some kind of Mary Cutter agreement or anything other

20  than what's in this agreement.  As Mr. Bullock said,

21  it's included in the agreement that PADI wants to remain

22  in the case to defend its reputation.  My understanding

23  is there's a number of cases throughout the United

24  States involving these similar defendants, at least the

25  insurance company for Blue Water and PADI, and Mr. Hall

1    represents a few plaintiffs, and so that's why the

2    reputation and how they align and fight these things

3    impacts in this case and why they want to stay involved

4    in this case.

5               The original complaint exists.  If we allege

6    something in there they can bring that to someone's

7    attention.  It doesn't magically go away.  If we amend,

8    if that was the case, I would amend a lot of complaints

9    because I've made a few mistakes in what I've pled.

10              THE COURT:  That's what I would think.

11              MR. GILCHRIST:  Yeah, I wish that was true.

12   It would be a good way to write things out.  I don't

13   know how justice will be any different if PADI is on the

14   verdict form like they want or like we want, and PADI

15   just has the ability to defend itself.

16              THE COURT:  Does that mean that PADI would

17   have the ability to call witnesses just like any other

18   party, even though it's in kind of this odd status as a

19   party against whom liability isn't being sought by

20   anybody, it's just there for allocation of fault, and so

21   do they have all the rights of any party because you're

22   going to sue them for this limited purpose?

23              MR. GILCHRIST:  They remain a party, I would

24   think they would.  That's an interesting question.

25   There's other things that could tie into that, where

1    they sit for one thing.

2              THE COURT:  A sort of quasi party.

3              MR. GILCHRIST:  Yeah.  But the statute says

4    they can be added for that purpose.

5              THE COURT:  It could have been more cleanly

6    written, it seems to me.

7              MR. GILCHRIST:  I agree.  It should say

8    proportionate share of fault, rather than proportions,

9    but that's just picking the language.

10             THE COURT:  And even to add the words for

11   which recovery is sought.  There is no recovery sought

12   by you now against PADI.

13             MR. GILCHRIST:  Any other person who caused

14   or contributed to the injury or damages for which -- it

15   is the injury for which recovery is sought, that's what

16   the injury is.  It can't be something unrelated, but,

17   right, it's poorly worded.

18             THE COURT:  Unless you -- unless that

19   pertains only to the any person, other than a person you

20   knew who caused the injury or damage for which

21   recovery -- I just think it could have been a little

22   cleaner to say exactly what you're saying it says.

23             But tell me this, and I'm probably just too

24   curious, I'm not saying it's going to matter a lot, but

25   as a sort of a practical matter and a fairness matter if

1  a plaintiff gets hurt and the injury is caused by, let's

2  say, two different actors, let's say a person gets hurt

3  because they're standing on the side of a road and two

4  cars collide, and one of them runs a red light and the

5  other one then got crashed into by the one that ran the

6  red light and then the crash pushes into the individual

7  and that individual ends up hurt and it sues both of

8  them.  I'll call the party that ran the red light A and

9  I'll call the party that got hit by the party that ran

10  the red light B.  And so the plaintiff sues and alleges

11  negligence on both of the parties' parts.  There's a

12  stronger case by anyone looking at the evidence, any

13  objective look, is against the person A who ran the red

14  light.  But they also have this sort of softer claim of

15  negligence against the other one for not keeping a

16  proper lookout or something like that, or maybe going a

17  little too fast, maybe above the speed limit, so you've

18  got something on them, even though they did have the

19  green light and they were entitled to go through, but

20  the notion is if they had been keeping a better lookout

21  or going the speed limit, they wouldn't have been in the

22  intersection, and so you had a combination of two

23  negligent acts which -- from which produced a crash and

24  which caused injury to the plaintiff, right?

25          MR. GILCHRIST:  Yes, gotcha.

```
 1                    THE COURT:  Okay.  So then let's say that

 2     the plaintiff settles with defendant A.

 3                    MR. GILCHRIST:  Red light.

 4                    THE COURT:  The red light runner for a

 5     million dollars.  Now, they've only got the case left

 6     against B, but A wants to come in and defend itself, or

 7     himself, which is exactly what would be happening here.

 8     And the plaintiff suddenly is not pursuing with any

 9     vigor any claim against A at trial, but, oh, yeah, maybe

10     he ran the red light, but it wasn't that bad, it had

11     only been red for a little while or something, anyway

12     takes an entirely different tact than the approach they

13     had been taking before when they were contemplating

14     bringing a lawsuit and trying the case against both of

15     these two parties.  In that kind of a circumstance how

16     much does the jury get to know?  Is the jury entitled

17     then, do you think, to be told about the fact that, you

18     know, the plaintiff is being a little inconsistent here,

19     in fact a lot inconsistent.  Before, the case against B

20     was just sort of a tagalong, in fact the big percentage

21     of fault was going to go to A, and you, jury, should

22     understand that the reason the plaintiff is so

23     inconsistent now with the position they took in their

24     original complaint and their original approach to this

25     case is because they settled with A for a million
```

1    dollars.  What do you say to that?

2            MR. GILCHRIST:  That happens all the time,

3    except you can't say the million dollars.  The law says

4    that's why they're here because they settled for -- they

5    can say a lot of money or they settled -- they just

6    can't say a million dollars, but they can say all that

7    had happened to me and they can say look at the expert

8    reports, the expert reports so far say it's all red

9    light person, but now they're coming in here and they

10   won't call that witness, or that witness has changed,

11   and look at their complaint, look at what the

12   police officers --

13           THE COURT:  The jury can get educated on

14   that.

15           MR. GILCHRIST:  Oh, yes.

16           THE COURT:  And they can be informed of the

17   existence of the settlement.

18           MR. GILCHRIST:  Correct.  And that's why all

19   of a sudden these things have changed, and that's why

20   now, we, the plaintiff's lawyer, is blaming this poor

21   innocent person who may have been going two miles over

22   the speed limit, rather than the drunk driver who ran

23   the red light.

24           THE COURT:  So that's why I say in terms of

25   fairness, if that's the -- I don't do a lot of these

1    cases.  Is this here on diversity, or why have I got it?

2    So if I did more, then I would know the answer to those

3    questions a little better.  Well, that's interesting.

4    It appears that at least Mr. Bullock agrees with you.

5    Mr. Waldbillig seems to be shaking his head, but if he

6    thinks that's correct, then he's indicated that he's not

7    going to object to your effort to help the jury

8    understand those kinds of facts.

9            MR. GILCHRIST:  Well, they get to bring up

10   the fact that this settlement's occurred.

11           THE COURT:  Yes.

12           MR. WALDBILLIG:  Yeah, there's the

13   settlement.  It's not all the rest, it's not here's how

14   it was aligned.  I can't even imagine a judge allowing

15   me to get up and talk about what the motivations were or

16   how the issues got to where they were to now.  But take

17   your example and say now A sits with the plaintiff and

18   the A helps point at B.  A says I didn't do anything

19   wrong, it was really if he hadn't been driving that one

20   mile an hour over the speed limit, or if he had just

21   looked up a half second sooner, this would not have

22   happened.  So suddenly it's really twisted as to who has

23   the real interest in what's going on in the case and

24   who's really pursuing it.  The jury will never get to

25   know that, and they'll object to the end of the world

1    for me to try and tell the jury how that happened.

2              THE COURT:  How would you -- why would you

3    be prevented from letting the jury know about that?

4              MR. WALDBILLIG:  To lay out what happened in

5    this case and how the parties settled and how they

6    wanted to go about doing it and how the most -- the jury

7    is never going to understand it to begin with.  But

8    really it's turning the system on top of its head to

9    allow basically two plaintiffs to now pursue one

10   defendant when in reality he was really a defendant

11   until he settled.  That's what will happen.  It won't be

12   that the plaintiffs' pursuing it, it will be PADI will

13   do all the work and the plaintiffs will sit back and go,

14   thank you, PADI, you're doing a great job in proving our

15   case for us, which is what they would have had to do

16   anyway.  They would have to prove exactly what PADI did,

17   but they want PADI to come on after they've settled and

18   they agreed never to be in conflict.

19              This doesn't have so much to do with the

20   settlement agreement as it does the candor to the court

21   about what's going on here, the fact there's a case in

22   controversy, the fact of whether they can make these

23   allegations in good faith on a factual basis.  That's

24   what we're talking about in terms of this amendment.

25   And they can't do that, and to let this happen -- we'll

1    have -- if you do let it happen, but I don't believe a

2    jury will ever get it.  This is something way above that

3    level.

4              THE COURT:  Okay.  Thank you.

5              MR. GILCHRIST:  The jury will understand

6    that we sued PADI originally and he can use now I've got

7    a complaint and an amended complaint and he can show

8    them how inconsistent and when the settlement occurred.

9    It happens all the time.  They say they've settled out,

10   that's why they don't want to blame -- usually they

11   don't have the red light sitting there, but always have

12   them saying it's all his fault, where are they, why

13   aren't they here today, if they think it isn't their

14   fault, blah, blah, blah, blah.  It happens all the time,

15   and juries, well, they seem to --

16             THE COURT:  What percentage of fault do you

17   have to put on Blue Water to get a recovery from them?

18             MR. GILCHRIST:  What percentage --

19             THE COURT:  I'm just trying --

20             MR. GILCHRIST:  Well, if the plaintiff is

21   50 percent, then I don't get it.  So if they're --

22             THE COURT:  You need to get 51 percent?

23             MR. GILCHRIST:  Well, PADI is on the verdict

24   too because they're going to put them on the verdict.

25             THE COURT:  I'm thinking of that verdict,

1    Boy Scouts, PADI, Blue Water.

2            MR. GILCHRIST:  If they want the Boy Scouts

3    still on, which they will, they also want --

4            THE COURT:  That's just what I'm assuming.

5    What number do you need to get allocated against Blue

6    Water in order to get a recovery against them?

7            MR. GILCHRIST:  1 percent if -- I've got to

8    keep my hands clear.

9            THE COURT:  It doesn't bother me.

10           MR. GILCHRIST:  Uh, it bothers me.  1

11   percent if the total -- with PADI, the Boy Scouts,

12   whoever else, they've added doctors, they've added the

13   other --

14           THE COURT:  Okay.  I had forgotten about

15   that.

16           MR. GILCHRIST:  If the plaintiff is less

17   than 50, then I can get that 1 percent from them.  If

18   they're zero, I can't get anything from them.

19           THE COURT:  If you get 1 percent from them

20   and you're, the plaintiff, is less than 50, how much

21   does that allow you to collect from that 1 percent?

22           MR. GILCHRIST:  1 percent.

23           THE COURT:  Only 1 percent.

24           MR. GILCHRIST:  That's why they want PADI on

25   the verdict, that's why they want the Boy Scouts, they

1   want the other child because --

2            THE COURT:  Right.  But it isn't a joint and

3   several thing --

4            MR. GILCHRIST:  No.

5            THE COURT:  -- like it was 25 years ago.

6            MR. GILCHRIST:  Yeah, it shows both of us --

7   I remember when that's how it was, and then they could

8   sue for contribution and cases never ended.  No, 51

9   percent, if they're 1 percent.

10           THE COURT:  They only have to pay for their

11  percent.

12           MR. GILCHRIST:  Yes, whether PADI's standing

13  here or not because they want the Boy Scouts on the

14  verdict, they want PADI on the verdict, just everybody

15  else.  That's -- they just don't want PADI to come in

16  and explain --

17           THE COURT:  To defend itself.

18           MR. GILCHRIST:  Yeah.  Mr. Waldbillig's a

19  good lawyer, so is Mr. Concannon, they'll show what a

20  conspiracy is between us and we're helping each other

21  out and what PADI is doing, and the original complaint,

22  and they settled and all --

23           THE COURT:  You at least anticipate a

24  relatively full illumination of the picture.

25           MR. GILCHRIST:  I would think they would,

1    they're pretty good lawyers, and they can do that,

2    that's their job.  It's always happened with other

3    lawyers, lawyers who have lesser abilities than these

4    gentlemen for them to do that.  I think they

5    underestimate their persuasiveness with the jury.

6             THE COURT:  All right.  Thank you,

7    Mr. Gilchrist.

8             Mr. Waldbillig, anything to respond?

9             MR. WALDBILLIG:  No.  I think I got my shot

10   in there in the middle of Mr. Gilchrist's avenue of

11   comparing whether they've in fact got a basis to even

12   make the allegation under the statute, whether they can

13   make it, when they say they're not at fault, but they do

14   it anyway, they change all their original complaint to

15   do it.  I just think at that point that justice doesn't

16   require that this court allow them to amend their

17   complaint to do what is questionable under the release

18   and under the statute at this point in the case with

19   less than a month before the end of discovery in this

20   case, I don't think that justice gets us to that level.

21            THE COURT:  You think it's more just to let

22   you point your finger at an empty chair that can't

23   defend itself?

24            MR. WALDBILLIG:  The chair is never empty.

25   They got their settlement money, they have -- by "they,"

1   the plaintiffs, have every incentive, just like in every

2   other case I'm in, to defend the lack of liability of

3   every one of those other defendants, the Boy Scouts and

4   PADI, and everyone else because they don't want us to

5   get 1 percent, they want PADI to get zero, they want the

6   Boy Scouts to get zero, they want the plaintiffs to get

7   zero, and they want 100 percent on Blue Water because

8   then, the only question is how much do they get out of

9   the whole verdict after we take into account all the

10  money they've already collected from all these parties

11  that they've previously had very long allegations of all

12  of their fault, and you superimpose that with one of

13  those party's now also helping the claim that they're

14  not at fault, that it's all Blue Water, that to me is

15  twisting what the purpose of the statute was.  But

16  plaintiffs are very ample --

17          THE COURT:  If they get, let's say, a $3

18  million verdict against you, 100 percent against you,

19  and zero against everybody else who's on the form, then

20  they would subtract the 800,000 they paid to PADI (sic)?

21  I didn't get that straight.

22          MR. WALDBILLIG:  They also have the money

23  from the Boy Scouts.  Yes, that would be our position is

24  is that you don't get to collect twice.

25          THE COURT:  Mr. Bullock and Mr. Gilchrist

34

1  don't --

2        MR. WALDBILLIG:  They'll say, but that's not

3  the case.

4        THE COURT:  You've got them ganging up on

5  you already because they both had negative sakes of the

6  head.

7        MR. GILCHRIST:  Then PADI made a really bad

8  deal if they paid 800 and they weren't at fault.  No,

9  they wouldn't get credit for 800,000.  That's the joint

10 and several again if that were --

11       THE COURT:  That's the only way -- okay.

12       MR. BULLOCK:  That's pretty well

13 established.

14       THE COURT:  Well, he said it.

15       MR. WALDBILLIG:  They'll argue it.

16       THE COURT:  Okay.  That's later.  I

17 didn't -- did I let the doctors stay in?  I thought --

18 didn't we have a motion on that?

19       MR. WALDBILLIG:  They're out.  It's only on

20 the affirmative defense to apportion fault.  They're not

21 a party.

22       THE COURT:  So they will be on the verdict

23 form.

24       MR. WALDBILLIG:  If the facts come out as

25 they're coming out in the case, yes.

1          THE COURT:  That's to be determined?

2          MR. WALDBILLIG:  They're on it now.  I guess

3  when we get to the end of discovery next month and the

4  decisions on motions and the rest, there may be a

5  different decision.

6          THE COURT:  All right.  The best I can do is

7  the best I can do to interpret this Utah statute, and I

8  cannot read it the way Mr. Waldbillig wants me to, nor

9  can I find in the agreement, the settlement reached by

10  the plaintiff and PADI, anything that obligates the

11  plaintiff to not bring this motion for leave to file an

12  amended complaint.  In fact, I think it's consistent

13  with their release in their settlement agreement.

14          I also don't think that Mr. Waldbillig's

15  client has standing to complain about whether that

16  settlement agreement and the release was breached or

17  not.  Neither side to the contract feels that it's

18  breached.  And they do have a specific provision

19  recognizing that as far as the law would allow that PADI

20  desires to remain a party in the case, if possible,

21  under the law to defend itself against any allegations

22  of wrongdoing.  The statutory provision reads that A

23  person seeking the recovery, and that is the plaintiff,

24  may join as a defendant any person, other than a person

25  in the interim suit, and that's in the next section, any

1   person alleged to have caused or contributed to the

2   injury or damage for which recovery is sought for the

3   purpose of having determined their respective

4   proportions of fault.  It's not perfectly clear, but I

5   think that it's clear enough that the only proper

6   interpretation is to allow the amended -- to grant the

7   motion and allow the amended complaint to be filed.

8           I will hold open for any additional comments

9   you want to make today, Mr. Waldbillig, but I want to

10  rule on it now, whether you have any additional comments

11  to make about your argument that there's something

12  unfair in the way the plaintiffs have removed some of

13  the prior verbiage in their previous complaint.  That's

14  a separate issue.  I could, I suppose, simply allow the

15  complaint to be amended to allege this new

16  apportionment-only cause of action against PADI, and

17  not, as you say, sanitize it by removing all of the

18  allegations about who is an agent of whom and who was

19  doing what.  I'm inclined to let them amend the

20  complaint as they have moved, but I don't think I've

21  heard you out completely on that, or I don't think I

22  understand it completely.  Now that I'm letting them add

23  their claim of allocation against PADI, do you have

24  anything additional you want to say on that subject?

25          MR. WALDBILLIG:  Your Honor, my only point

1    is is that in the original complaint, as we move forward

2    now as a party whose fault is being apportioned, new

3    ground whether they get to be assumed a defendant and

4    they're going to call witnesses and they're going to go

5    to depositions, they're going to do whatever else, I

6    think even if you read the statute as you're reading it

7    and you don't read the settlement agreement to say they

8    can't make the allegations they're making in good faith,

9    at least the allegations that are the basis they're

10   seeking the fault allocation, which is in their

11   complaint, should remain, rather than just throw them

12   all out, which they've made all these admissions as to

13   why they're allocating fault, why PADI's at fault, why

14   the Boy Scouts are at fault, why all these people, we're

15   taking all those out and saying we start anew with an

16   amended complaint that's basically sanitized all of what

17   I call the judicial admissions that we're going to rely

18   on going forward and would explain to the jury why

19   what's happened in this case and why the claims are

20   against PADI and the Boy Scouts and the rest, rather

21   than now holding up the complaint in which you'll never

22   find any of those because the only allegations against

23   them are two sentences in this apportionment cause of

24   action, of which they don't really say much.  And now we

25   know, in addition, they're going to get up in front of

1     the jury and say and we don't believe PADI was at fault.

2                    THE COURT:  All right.

3                    Mr. Gilchrist, on that point, what are you

4     going to tell me, that it's customary to do this?

5                    MR. GILCHRIST:  I'm not sure I quite tracked

6     what he said.  I'm not sure what he wants to do.  I'm

7     sorry, so I'm not --

8                    THE COURT:  I'm not entirely sure either,

9     which was true the first time around, which is why I

10    asked for additional comment.  I've ruled on the main

11    thing you want to do, but you also want to change your

12    complaint quite a bit and remove all of those

13    allegations that supported fault and wrongdoing against

14    PADI.  He doesn't think that's fair.

15                   MR. GILCHRIST:  And also the Boy Scout

16    provision.

17                   THE COURT:  He doesn't think that's fair.

18    And I guess because he thinks that the jury is going to

19    be seeing the complaint?  I'm not sure I understand

20    exactly why you think this is so important to you,

21    Mr. Waldbillig, either.

22                   MR. WALDBILLIG:  The use of the allegations

23    of the complaint that outline how the fault, outlined

24    vicarious liability, outlined the agency, which --

25                   THE COURT:  How do you get to use them

 1   better if that is still the complaint that controls the

 2   case as opposed to this new sanitized version?

 3              MR. WALDBILLIG:  Well, and that's what I

 4   thought the court was asking me.  To me, at that point,

 5   if they want to add PADI in, then what the court asked

 6   me was should we just add the one cause of action to the

 7   original complaint.

 8              THE COURT:  Right.

 9              MR. WALDBILLIG:  And my response was yes,

10   because we should be able to keep the basis on which

11   they are going to apportion fault to PADI that they

12   claim and also the basis of all of the other claims that

13   they're going to try and apportion, we should be able to

14   use all those admissions and things that they've alleged

15   as we move forward in a defense of the Blue Water

16   defendants.

17              THE COURT:  I think the only basis for

18   apportioning fault would be the evidence presented at

19   the trial, won't it, not what they've alleged, but what

20   they prove at trial?

21              MR. WALDBILLIG:  We will use as part of our

22   motions -- we are going to file motions for summary

23   judgment -- exact factual allegations they have made in

24   the complaint as judicial admissions that they can't

25   retract, they can't go back against, we will also say

1    those are judicial admissions in that original complaint

2    to show that we should be volunteers, and, if not, the

3    court finds a question of fact, we want to be able to

4    use those as alleged, they've alleged that.  That's what

5    they alleged.

6              THE COURT:  Well, those don't vanish.  It's

7    not like one of those Etch-A-Sketch things and once you

8    rip it up it's gone forever.  It's still there, it was

9    something they alleged at one point in time.  That's

10   what I was trying to explore with you earlier.  They

11   don't go away.  That's just that the new complaint

12   frames the issue in a different manner, and that doesn't

13   eliminate your opportunity to explain that as

14   appropriate under the Rules of Evidence to a jury.

15             MR. WALDBILLIG:  Their complaint doesn't

16   include all of the products liability claims, the

17   failure to warn, the breach, all of the claims that were

18   against PADI, none of those are in there.  Now the only

19   allegations you will find about the fault of PADI are

20   only contained in two paragraphs, we signed a settlement

21   agreement, if there's responsibility for anything that

22   they have done, they should have to pay for it.  All the

23   rest of the allegations that they have made throughout

24   the case are gone.  Whether we can -- we'll see, I've

25   not researched it, but to my mind once you have an

1    amended complaint, they'll argue no, we're dealing with

2    this complaint, that complaint's been superseded and

3    gone.

4              THE COURT:  Well, I think I've said at least

5    three times today it doesn't go away, it's still there.

6    Frankly, it will help the court if I have a complaint

7    that's current from which to prepare a pretrial order

8    for purposes of anticipating what will be admissible and

9    pertinent to a trial.

10             MR. WALDBILLIG:  The basis on which the

11   plaintiff has asserted their claim for apportionment, at

12   least against PADI, I suspect their argument against the

13   Boy Scouts, Boy Scouts they didn't sue, will be the

14   basis of the original complaint, if it's still there.

15   If you allow the amended complaint that they're

16   proposing, what will their basis be that they'll pursue

17   for that apportionment of fault?  There won't be

18   anything because they won't pursue it.

19             THE COURT:  Only the facts that come in.

20             MR. WALDBILLIG:  On the relevance of the

21   claims they made against PADI?  I don't think they're

22   going to pursue the apportionment claim.  What will

23   happen is PADI will pursue that.  They have no interest

24   in it, so this is PADI pursuing it, not the plaintiffs.

25             THE COURT:  And from what Mr. Gilchrist

1    said, the jury will be -- you'll be entitled to inform

2    the jury that the settlement was reached, and the jury

3    will understand why the plaintiff isn't pursuing with

4    any vigor, or at all, claims of wrongdoing against PADI

5    and why they're focused like a laser on you.

6         MR. WALDBILLIG:  And the jury ought to be

7    explained why PADI is now where PADI is basically with

8    the plaintiff in this case, rather than the defendant

9    and what PADI's interests and motivations are in what's

10   going on in this case.

11        THE COURT:  Well, that seems like the

12   easiest thing in the world to understand.  Why won't the

13   jury understand that?  Oh, the plaintiffs used to be

14   blaming driver A and now they don't have any incentive

15   to blame driver A anymore because they settled with

16   them, and driver A here is also blaming driver B.  I

17   think that goes on all the time.

18        MR. WALDBILLIG:  A year from now, Your

19   Honor, when we are back here fighting over what the jury

20   will be instructed, we won't be talking about all these

21   things that they'll be instructed, they'll be instructed

22   that they reached a settlement, the amount's not

23   important, that's what they'll be told.  I'm confident

24   they will argue that that's all they need to be told.

25        THE COURT:  It may be that the jury will be

1    told that the amount will not be divulged to them.  I'm

2    assuming that's probably the customary practice, that we

3    don't put amounts, and the jury will be told that there

4    was a settlement reached.  And Rule 408 doesn't keep

5    that out.

6             MR. WALDBILLIG:  But will they be told that

7    the plaintiffs entered into a settlement agreement that

8    allowed PADI to stay in the case with them in order to

9    defend the case against Blue Water, and they'll never

10    get that detail.  So the benefit of what the allegations

11    were in the original complaint versus what they are

12    claiming now will be lost.  I don't believe that a year

13    from now when the court looks at this and says, well,

14    I'm not going to tell the jury all that because none of

15    this is going to be fresh anymore, it will be long gone,

16    and we will lose the issue about what really happened in

17    terms of the original complaint and what happened in the

18    amended complaint, what the allegations were.

19             THE COURT:  All right.  Anything else?

20             MR. GILCHRIST:  We can have a jury

21    instruction about the settlement saying that even though

22    PADI is settling, it believes that Blue Water, Lowell

23    Huber, and Douglas acted improperly, and were the

24    primary, if not the sole cause of the event, we'll so

25    stipulate.  I mean that's easy.  If he wants really --

1    if he really wants that language, it would be bad for

2    him.  That would explain what happened and why they

3    settled, they were protecting their good name.  So

4    that's -- sure, if he wants the jury to know that, we

5    can stipulate, but that's a long way down the road.

6                THE COURT:  Well, on the narrow issue of

7    whether the other allegations that have been changed

8    from the first complaint to this proposed amended

9    complaint, I will allow it.  I am recognizing now that

10   that does not eliminate the previous complaint from

11   being referred to in all appropriate ways to explain

12   something either to the court in a motion for summary

13   judgment or, if it complies with the rules of evidence,

14   to a jury during the trial.

15               I don't see how it's -- it's interesting,

16   but I don't see how it's really unfair to a defendant

17   like Blue Water, who wants to allocate fault to PADI, to

18   allow PADI to defined itself against those allegations

19   in the trial.  I would think that it's rare that a

20   defendant, a codefendant, wants to stick around and

21   defend itself.  But it also isn't unusual to expect a

22   situation where a defendant would want to spend the

23   money and time to defend its good name in a case where

24   they're being blamed for something like a wrongful

25   death.  Blue Water seems to want to have the advantage

1   of being able to point a finger against PADI without

2   letting PADI have any right to defend itself directly in

3   open court and to put that burden only on the plaintiff.

4   So I don't know what's so wrong with this.  I might be

5   missing something, but I've ruled, the motion is

6   granted.

7              Did you say a year from now?  Can't we get

8   this done quicker than that?

9              MR. WALDBILLIG:  I can make it more

10   specific, Your Honor, because the scheduling order

11   says --

12              THE COURT:  Maybe it is a year from now.

13              MR. WALDBILLIG:  Final pretrial is

14   September 21, 2015, the trial starts on October 5th.

15              THE COURT:  It is a year from now.  Well,

16   I'm sure you're going to have a delightful year

17   together, and I will see you back here sometime between

18   now and a year from now, if we hold that schedule.

19              Thank you for your arguments.  They have

20   been very helpful and very good.  If there's nothing

21   else, we're in recess.

22              (Whereupon, the matter was concluded.)

23                         *   *   *

24

25

1                    C E R T I F I C A T E

2

3    State of Utah

4    County of Salt Lake

5

6         I, Karen Murakami, a Certified Shorthand Reporter

7    for the State of Utah, do hereby certify that the

8    foregoing transcript of proceedings was taken before me

9    at the time and place set forth herein and was taken

10   down by me in shorthand and thereafter transcribed into

11   typewriting under my direction and supervision;

12        That the foregoing pages contain a true and

13   correct transcription of my said shorthand notes so

14   taken.

15        IN WITNESS WHEREOF, I have hereunto set my hand

16   this  28th day of October, 2014.

17

18

19                              _____
                                    Karen Murakami

20                              Karen Murakami, CSR, RPR

21

22

23

24

25