IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER JOSEPH TUVELL, SHERRY LYNN TUVELL, individually and as heirs of David Christopher Tuvell, and THE ESTATE OF DAVID CHRISTOPHER TUVELL | MEMORANDUM DECISION |
| | Case No. 1:12-cv-00128-DB-DBP |
| Plaintiffs, | District Judge Dee Benson |
| v. | Magistrate Judge Dustin B. Pead |
| PROFESSIONAL ASSOCIATION OF DIVE INSTRUCTORS ("PADI"), BLUE WATER SCUBA, LOWELL HUBER, CORBETT DOUGLAS, | |
| Defendants. | |

This matter was referred to the Court under 28 U.S.C. § 636(b)(1)(A). (Dkt. 213.) This lawsuit arises from a July 2011 scuba diving accident that resulted in the death of David Christopher Tuvell. Defendants Blue Water Scuba, Lowell Huber and Corbett Douglas (collectively "Blue Water") bring the present motion to obtain leave to substitute an expert and to modify the scheduling order. (Dkt. 217.)

I.      **Analysis**

Blue Water seeks to substitute Thomas Powell, Ph. D., for their previously-disclosed expert, Capt. Gilliam, who stopped providing his services for reasons related to his compensation. (Dtk. 217.) Capt. Gilliam withdrew from the case only days before his scheduled deposition. Blue

Water argues that any prejudice caused by the proposed substitution and scheduling modification will be minimal and can be adequately cured.

Plaintiffs oppose the motion arguing that Blue Water's injury is self inflicted because they failed to pay their expert and that the expert discovery deadline has passed. (*Id.*) Additionally, Plaintiffs point out that Blue Water itself claims that most of the testimony expected from Capt. Gilliam can be provided by Blue Water's other expert, Dr. David Sawatzky. Finally, Plaintiffs point to several communications from Blue Water's counsel in which he refused to stipulate to scheduling modifications and expressed a desire to "get the show on the road."[1] (Dkt. 221.)

Defendant Professional Association of Dive Instructors ("PADI") also opposes the motion, asserting that Blue Water was stricken with "buyer's remorse" after Sawatzky's deposition and simply seeks a new expert to provide an opinion more to Blue Water's liking. (Dkt. 223.) PADI also asserts that it will be prejudiced because the trial schedule will be altered while the new expert is deposed, counter experts are identified, and new motion deadlines set. PADI additionally points to the time and resources expended to prepare for Capt. Gilliam's deposition, which was cancelled only days before it was scheduled to occur. Finally, PADI asserts that Blue Water and its counsel's own actions created their problem and they should have to accept the consequences of those actions.

---

[1] Plaintiffs point to Blue Water's counsel's earlier refusal to stipulate to scheduling changes. It is somewhat ironic in that Plaintiffs do so in the same breath that they oppose the present motion for modification of the discovery schedule. All parties are admonished to comply with their professional duties regarding scheduling accommodations and adjustments. *See* D.U. Civ. R. 83.1-1(g).

The Court may, in its discretion, modify a scheduling order for good cause. Fed. R. Civ. P. 16(b); *Rimbert v. Eli Lilly & Co.*, 647 F.3d 1247, 1254 (10th Cir. 2011). The Tenth Circuit examines four factors to evaluate the Court's use of its discretion:[2]

> (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Id.* (citing *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599 (10th Cir. 1997)).

### a. *Rimbert* factors

As to the first and second factors, the Court finds that there is no prejudice as that term is used in *Rimbert* because the problems created are monetary in nature. It is true that only days before Capt. Gilliam's scheduled deposition, Blue Water disclosed that Capt. Gilliam had withdrawn from the case for problems related to payment of his invoices. Also, Dr. Powell's identity was revealed on March 13, 2015, three days before the close of expert discovery. This creates a scramble for all involved to modify scheduling orders and adjust to these changed circumstances. Nonetheless, modification of the scheduling order alone does not constitute the type of prejudice with which we are now concerned.

Next, Plaintiffs and PADI credibly assert that this change resulted in wasted resources preparing for Capt. Gilliam's deposition. While this may present a type of prejudice, it can be remedied. *See Rimbert* at 1255; *Sithon Mar. Co. v. Holiday Mansion*, No. CIV. A. 96-2262-EEO, 1998 WL 433931, at *1 (D. Kan. July 30, 1998). In the event Blue Water introduces a new expert, it must remedy this prejudice by paying for the reasonable costs and attorney fees

---

[2] While the parties and even some cases refer to these factors as the standard by which good cause is measured, *Rimbert* speaks otherwise. Rather than setting for an exhaustive list of factors for determining "good cause" the *Rimbert* court was merely recounting factors the Tenth Circuit considers for abuse of discretion. *Id.* at 1254.

incurred by Plaintiffs and PADI to prepare for Capt. Gilliam's deposition. If the parties are able to determine an appropriate amount on their own, the Court will accept their arrangement. If a dispute arises, the Court will review the purported charges and determine a proper award.

Second, while Plaintiffs and PADI suggest that trial may be delayed by modification of the scheduling order, the relevant inquiry is how much time the opposing party has to prepare for the witness before trial. The *Summers* court reversed a trial court's denial of a motion to substitute an expert filed only eighty days before trial, and also noted cases involving a shorter timeframe. *Summers* at 605. The present motion was made over six months before trial. Accordingly, this factor tips in favor of Blue Water. Although trial could conceivably be delayed, the substitution will not disrupt the orderly trial of the case, which is nearly six months away.

As to the fourth factor, the Court does not find that Blue Water acted willfully or in bad faith. While its opponents have suggested Blue Water is merely seeking a second bite of the expert apple, none of Blue Water's actions rise to the level of willful disregard for the scheduling order.

**b.  Good cause**

PADI and Plaintiffs suggest that no good cause exists here because Blue Water is improperly attempting to substitute experts based on dissatisfaction with Dr. Sawatzky's deposition testimony. This is not supported by the facts here. Blue Water has been attempting to replace Capt. Gilliam since he withdrew from the case due to a payment dispute. PADI attempts to ascribe the actions of Blue Water's insurer to Blue Water itself to demonstrate that Blue Water created the payment dispute. (Dkt. 223.) PADI does not acknowledge that Blue Water's counsel offered to guarantee Capt. Gilliam's fee. (Dkt. 217 at 5.) It would be unfair to attribute the insurer's failure to timely pay a fee to Blue Water, while denying them the benefit of their counsel's offer to guarantee payment. Thus, the payment dispute does not appear to be Blue

Water's attempt to switch experts last minute because even with the offer of a payment guarantee, Capt. Gilliam elected to withdraw shortly before his deposition.

Nonetheless, the Court finds that good cause for substitution and modification only exists with respect to the purported issues with "in the PADI DSD program and standards . . . ." (Dkt. 217.) Capt. Gilliam opined on whether PADI's standards conform to industry standards. Dr. Sawatzky did not testify about these standards but, by Blue Water's own concession, Dr. Sawatzky can already provide 90% of the evidence they need. Thus, Blue Water has only shown good cause to substitute an expert on the issue of the quality of PADI's standards. They have identified no other evidentiary deficiency created by Capt. Gilliam's departure.

## II.   <u>Order</u>

For the reasons set forth above, the Court:

**GRANTS** Blue Water's motion to substitute expert and amend the scheduling order on the condition that Blue Water pay Plaintiffs' and PADI's reasonable costs and attorney fees incurred in preparation for Capt. Gilliam's depositions.  (Dkt. 217.)

Additionally, Blue Water must provide its new expert report by close of business on April 29, 2015. That report must be limited to purported issues with "in the PADI DSD program and standards . . . ." Blue Water shall make their new expert available for deposition no later than May 15, 2015. Consequently, the deadline for dispositive motions and motions to disqualify experts is suspended.

After Blue Water's new expert's deposition, the parties shall submit a proposed schedule for the remainder of the case. If the parties are unable to agree to a schedule, they shall petition the Court for a status conference to discuss the matter.

IT IS SO ORDERED.

Dated this 15th day of April, 2015.

By the Court:

_____
Dustin B. Pead
United States Magistrate Judge